UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DOUGLAS R. MCCARROLL,

                                        Plaintiff,

                                                                9:09-CV-0355
v.                                                              (NAM/GHL)

Y. MATTEAU,

                                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

DOUGLAS R. MCCARROLL
Plaintiff *pro se*
c/o Law Offices of Bruce Corrigan, Jr.
1853 Post Road East
Westport, Connecticut 06880

HON. RICHARD S. HARTUNIAN                        CHARLES E. ROBERTS, ESQ.
United States Attorney for the
 Northern District of New York
Counsel for Defendant
Syracuse Office
100 South Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

**<u>ORDER and REPORT-RECOMMENDATION</u>**

This *pro se* prisoner civil rights action, commenced pursuant to *Bivens v. Six Unknown*

*Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), has been referred to me for

Report and Recommendation by the Honorable Norman A. Mordue, Chief United States District

Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Douglas R. McCarroll

alleges that Defendant Y. Matteau, a guard at FCI Ray Brook, violated his constitutional rights by

sexually assaulting him and harassing him and that he was motivated, in part, by Plaintiff's status as a jailhouse lawyer.  Currently pending before the Court is Defendant's motion to dismiss for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6).  (Dkt. No. 13.)  For the reasons that follow, I recommend that Defendant's motion be deemed a partial motion to dismiss and be granted, that Defendant be directed to respond to Plaintiff's retaliation, Fourth Amendment, equal protection, and infliction of emotional distress claims, and that the Court *sua sponte* dismiss Plaintiff's substantive due process, procedural due process, Sixth Amendment, Ninth Amendment, and state court claims for sexual assault, negligence, and assault and battery.

## I.     BACKGROUND

The complaint alleges that Plaintiff was transferred to FCI Ray Brook on April 18, 2006, and assigned to the Mohawk housing unit.  (Dkt. No. 1 ¶ 7.)  In May 2006, Plaintiff was given a storage room in the housing unit for his legal papers and books.  (Dkt. No. 1 ¶ 8.)  Beginning in June 2006, Defendant Y. Matteau began coming into the storage room while Plaintiff was there to ask him questions about why he had so much legal work.  During these encounters, Defendant "appeared agitated that the Plaintiff had a storage room for his legal work."  Defendant also made "wise cracks about the Plaintiff's *pro se* litigant status."  (Dkt. No. 1 ¶¶ 9-10.)

On one occasion in the fall of 2006, Defendant would not let Plaintiff eat dinner.  (Dkt. No. 1 ¶ 11.)

In April 2007, Defendant was assigned to Plaintiff's housing unit.  (Dkt. No. 1 ¶ 12.)  On April 14, 2007, Plaintiff, who had just showered and was wearing only a bathrobe, was in his cell with his cell mate waiting for the morning count.  (Dkt. No. 1 ¶¶ 13-15.)  Defendant opened the cell door and ordered Plaintiff's cell mate to step out.  (Dkt. No. 1 ¶ 16.)  When Plaintiff's cell

mate complied, Defendant stepped into the cell and closed the door behind him.  (Dkt. No. 1 ¶ 17.)  Defendant ordered Plaintiff to turn around for a pat down.  Plaintiff complied.  As he conducted the pat down, Defendant squeezed Plaintiff's penis and said "Oh, you got shortchanged."  (Dkt. No. 1 ¶ 18.)  When Plaintiff protested, Defendant said "I'm not through with you yet, not by a longshot.  This is just the beginning.  You think you're so cool because you['re] the Legal Beagle here.  Well ya know what?  I own you now.  And if you tell anyone or write me up for it, nobody will believe you and you'll be put in the hole."  (Dkt. No. 1 ¶ 19.) Defendant then exited the cell, instructed Plaintiff's cell mate to step back inside, and locked the door.  (Dkt. No. 1 ¶ 20.)

Plaintiff was away from his cell until later that afternoon.  When he returned, he learned that Defendant had spent "almost the entire afternoon . . . shaking down" his cell.  (Dkt. No. 1 ¶ 21.)  Plaintiff's cell was "destroyed."  (Dkt. No. 1 ¶ 22.)  When he asked Defendant "if this was business or personal . . . the defendant replied 'a little business but mostly personal.'" *Id.*

Plaintiff alleges that between April 2007 and April 2008,  Defendant engaged in a campaign of harassing him.  (Dkt. No. 1 ¶ 23.)  On one occasion, Defendant pointed his gun at Plaintiff and smiled.  (Dkt. No. 1 ¶ 24.)  On many occasions, Defendant used his forefinger and thumb to make a sign as if to mean "little" when he encountered Plaintiff.  (Dkt. No. 1 ¶¶ 25, 29, 40, 45, 49, 53, 56, 60, 63, 65, 67, 75, 78, 86, 98, 103, 107.)  On many occasions, Defendant made a kissing gesture with his lips at Plaintiff.  (Dkt. No. 1 ¶¶ 26, 30, 31, 33, 36, 38, 41, 42, 47, 52, 55, 58, 61, 64, 66, 67, 69, 72, 74, 76, 77, 79, 81, 83, 87, 89, 93, 96, 99, 101, 102, 105, 125, 126, 127.)  On many occasions, Defendant referred to Plaintiff as "my little man" and made other references to the size of Plaintiff's genitals.  (Dkt. No. 1 ¶¶ 28, 32, 34, 35, 37, 44, 50, 51, 62, 69,

70, 73, 84, 104, 129.)  Several times, Defendant referred to Plaintiff as "sweet cheeks."  (Dkt. No. 1 ¶ 85, 88, 90, 91, 126.)  On one occasion, Defendant said "Little man thinks he's a lawyer, does he?"  (Dkt. No. 1 ¶ 39.)  Several times, Defendant smiled or smirked at Plaintiff.  (Dkt. No. 1 ¶¶ 43, 48, 54, 59, 68.)  Several times, Defendant denied Plaintiff entry to a gate used by other inmates because "little dicks don't get a pass."  (Dkt. No. 1 ¶¶ 46, 57, 71.)

On December 26, 2007, Plaintiff returned to his cell to find Defendant 'shaking it down.' (Dkt. No. 1 ¶ 80.)  Defendant told Plaintiff to come into the cell.  When Plaintiff did so, Defendant shut the door behind him.  *Id*.  Defendant told Plaintiff "this cell needs cleaning.  If you don't get it to the legal limit, I will.  I don't mind the legal work because you['re] a hot shot legal beagle.  But the other shit has to go . . . When I come back, it better be right."  *Id*. Defendant instructed Plaintiff to turn around and put his arms out.  Defendant then placed both hands on Plaintiff's buttocks, squeezed them, and said "now you['re] my sweet cheeks.  Don't forget, no one will believe you if you say something and you'll go to the hole if you[] do."  *Id*. Defendant left Plaintiff's cell.  *Id*.

On February 28, 2008, Plaintiff returned to his cell to find it locked.  Defendant said he would unlock it.  (Dkt. No. 1 ¶ 94.)  Defendant unlocked the cell, instructed Plaintiff to come inside, closed the door behind Plaintiff, told Plaintiff to turn around, and said "I need to squeeze those buns again little man."  *Id*.  Plaintiff refused.  Defendant turned red in the face and said "Big mistake.  Now I'm really going to fuck with you . . . Now I'll write you a shot and this ain't over, not by a long shot."  Defendant left, carrying Plaintiff's mattress.  *Id*.

Later that day, Plaintiff was issued a misbehavior report written by Defendant accusing him of altering or destroying government property.  (Dkt. No. 1 ¶ 95.)  At the disciplinary

4

hearing, the charge was reduced to "Prohibited Act Code violation of a #305." Plaintiff was found guilty and sanctioned with 90 days' loss of commissary privileges. A few weeks later, the charge was expunged from Plaintiff's central file. (Dkt. No. 1 ¶ 97.)

On March 4, 2008, Defendant shook down Plaintiff's cell and removed two pillows. (Dkt. No. 1 ¶ 98.)

On March 21, 2008, Plaintiff was in the law library when another inmate told him that Defendant had been in Plaintiff's cell for most of the morning "destroying" it. The inmate said that when he asked Defendant what he was doing, Defendant said "It's my last day in the Unit and McCarroll's due. I'm going to fuck with him all day." (Dkt. No. 1 ¶ 108.) When Plaintiff returned to his cell that afternoon, it "looked like a cyclone hit it." (Dkt. No. 1 ¶ 111.) Plaintiff found Defendant and asked him why he stole a green bell pepper from his cell. Defendant replied "this all could have been avoided if only you would have let me get a feel last month." (Dkt. No. 1 ¶ 116.) Later Plaintiff discovered that in addition to the pepper, Defendant had stolen a book catalog from Plaintiff's cell. *Id.*

On March 22, 2008, Defendant attempted to prevent Plaintiff from returning to the Education Unit. An Education Unit staff member intervened and Defendant told Plaintiff " I guess little dicks get a pass today." (Dkt. No. 1 ¶¶ 122-124.)

On April 14, 2008, Defendant "threw the Plaintiff's chair [out] of the tier." (Dkt. No. 1 ¶ 128.)

On May 5, 2008, a lieutenant interviewed Plaintiff regarding a grievance he had filed against Defendant. The lieutenant told Plaintiff that every officer has an inmate that he is allowed to harass, and Defendant had chosen Plaintiff. The lieutenant told Plaintiff that

Defendant's conduct did not rise to the level of misconduct or harassment.  (Dkt. No. 1 ¶ 130.)

Plaintiff alleges that Defendant conducted his campaign of harassment because "Plaintiff is a *pro se* litigant and helps other prisoners with their legal work."  (Dkt. No. 1 ¶ 131.)  Plaintiff alleges that Defendant retaliated against him for exercising his rights under the First and Sixth Amendments and violated the Eighth Amendment by sexually assaulting him.  *Id*.  Plaintiff alleges that Defendant committed the state law torts of negligence, infliction of emotional distress, and assault and battery.  (Dkt. No. 1 ¶ 142.)  He alleges that Defendant violated his rights under the Fourth Amendment, the Due Process Clause, and the Equal Protection Clause. *Id*.  Plaintiff requests $ 4 million in compensatory damages and $4 million in punitive damages. (Dkt. No. 1 at 31.)

Defendant now moves to dismiss the complaint.  (Dkt. No. 13.)  Plaintiff has opposed the motion.  (Dkt. No. 17.)  Defendant has filed a reply.  (Dkt. No. 18.)

## II.  LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added).  "Determining whether

a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

## III.   ANALYSIS

### A.   Eighth Amendment

Plaintiff alleges that Defendant violated his Eighth Amendment rights. (Dkt. No. 1 at 30, 33.) Defendant argues that, under Second Circuit precedent, Plaintiff's complaint fails to state an Eighth Amendment claim. (Dkt. No. 13-1 at 3-5.) Defendant is correct.

Sexual abuse of a prisoner by a corrections officer may, in some circumstances, violate the prisoner's Eighth Amendment right to be free from cruel and unusual punishment. For example, "severe or repetitive sexual abuse of an inmate by a prison officer" may be actionable under the Eighth Amendment, as may situations where "no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct." However, the

Second Circuit and its district courts require allegations of very extreme and severe conduct with no imaginable penological purpose before finding that an inmate has stated an Eighth Amendment sexual abuse claim. Courts considering complaints with allegations similar to Plaintiff's have routinely found them insufficient. *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997) (holding that allegation that correctional officer touched inmate's penis on one occasion and pressed against him sexually on another occasion, while "despicable," was insufficient to state Eighth Amendment claim); *Garcia v. Watts,* No. 08 Civ. 7778, 2009 U.S. Dist. LEXIS 84697, 2009 WL 2777085 (S.D.N.Y. Sept. 1, 2009) (allegation that guard subjected prisoner to an "ongoing and continuous pattern of harassment" that extended "over a year" and, on separate occasions, grabbed prisoner's buttocks and rubbed his penis against prisoner's buttocks insufficient to state Eighth Amendment claim)[1]; *Excell v. Fischer,* No. 9:08-CV-945, 2009 U.S. Dist. LEXIS 88506, 2009 WL 3111711 (N.D.N.Y. Sept. 24, 2009) (allegation that guard grabbed and squeezed prisoner's penis during pat frisk insufficient to state Eighth Amendment claim)[2]; *Sharpe v. Taylor,* No. 9:05-CV-1003, 2009 U.S. Dist. LEXIS 125251, 2009 WL 1743987 (N.D.N.Y. Mar. 26, 2009) (allegation that guard sexually harassed prisoner and fondled his anus insufficient to state Eighth Amendment claim)[3]; *Eng v. Therrien,* No. 9:04-CV-1146, 2008 U.S. Dist. LEXIS 99246, 2008 WL 141794 (N.D.N.Y. Jan. 11, 2008) (allegation that

---

[1]     Defendant served a copy of this unpublished decision on Plaintiff with his moving papers.

[2]     Defendant served a copy of this unpublished decision on Plaintiff with his moving papers.  (Dkt. No. 13-2.)

[3]     Defendant served a copy of this unpublished decision on Plaintiff with his moving papers.  (Dkt. No. 13-2.)

guards touched prisoner's penis, testicles, and rectal cavity during several pat frisks insufficient to state Eighth Amendment claim)[4]; *Morrison v. Cortright,* 397 F. Supp. 2d 424 (W.D.N.Y. 2005) (allegation that correctional officer shone light up inmate's anus, ran his middle finger between inmate's buttocks causing inmate to urinate on himself, and rubbed his penis against inmate's buttocks during strip frisk insufficient to give rise to constitutional claim); *Davis v. Castleberry*, 364 F. Supp. 2d 319, 321 (W.D.N.Y. 2005) (allegation that correctional officer grabbed inmate's penis during pat frisk insufficient to state constitutional claim); *Montero v. Crusie*, 153 F. Supp. 2d 368 (S.D.N.Y. 2001) (allegation that, on several occasions, correctional officer squeezed inmate's genitalia while pat-frisking him did not show sufficiently serious deprivation to establish Eighth Amendment violation, particularly when inmate did not allege that he was physically injured by such conduct); *Moncrieffe v. Witbeck,* No. 97-CV-253, 2000 U.S. Dist. LEXIS 9425, 2000 WL 949457 (N.D.N.Y. June 29, 2000) (allegation that two guards each sexually touched prisoner once during pat frisks insufficient to state an Eighth Amendment claim)[5]; *Holton v. Moore,* No. CIV. A.96CV0077, 1997 U.S. Dist. LEXIS 16178, 1997 WL 642530 (N.D.N.Y. Oct. 15, 1997) (prisoner's allegations that guard touched his bare chest; put his hands down his pants, parted his buttocks, and touched his anus; and unzipped his pants and touched his penis insufficient to state Eighth Amendment claim)[6]; *Williams v. Keane*, No. 95

---

[4]     Defendant served a copy of this unpublished decision on Plaintiff with his moving papers.  (Dkt. No. 13-2.)

[5]     Defendant served a copy of this unpublished decision on Plaintiff with his moving papers.  (Dkt. No. 13-2.)

[6]     Defendant served a copy of this unpublished decision on Plaintiff with his moving papers.  (Dtk. No. 13-2.)

9

Civ. 0379, 1997 U.S. Dist. LEXIS 12665, 1997 WL 527677, at *11 (S.D.N.Y. Aug. 25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during pat frisk failed to state constitutional claim)[7].

Nothing in Plaintiff's complaint distinguishes his claim from any of the cases cited above. Therefore, I recommend that the Court grant Defendant's motion to dismiss Plaintiff's Eighth Amendment claim.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). An opportunity to amend is not, however, required where "the problem with [the plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted). Here, better pleading would not cure the defects with Plaintiff's Eighth Amendment claim. Therefore, I recommend that this cause of action be dismissed with prejudice.

### B.  Verbal Harassment

Plaintiff alleges that Defendant subjected him to a pattern of sexual harassment that lasted from April 2007 to April 2008. (Dkt. No. 1 ¶ 23.)  Defendant argues that any claims based solely on the alleged verbal harassment must be dismissed because "mere verbal harassment of an inmate by a prison official is insufficient to state a constitutional claim." (Dkt. No. 13-1 at 5.) Defendant is correct. "Although indefensible and unprofessional, verbal threats or abuse are not

---

[7]    The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

sufficient to state a constitutional violation cognizable under § 1983." *Jermosen v. Coughlin*, 878 F. Supp. 444, 449 (N.D.N.Y. 1995).  *See also Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998).  Therefore, I recommend that the Court dismiss Plaintiff's claim that Defendant violated his constitutional rights by verbally harassing him, without leave to amend.

### C.     Retaliation

Plaintiff's complaint alleges quite clearly that Defendant was motivated to sexually abuse and harass him because "Plaintiff is a *pro se* litigant and helps other prisoners with their legal work."  (Dkt. No. 1 ¶ 131.)  The complaint alleges that Defendant, on several occasions, made disparaging remarks about Plaintiff's legal activities.  (Dkt. No. 1 ¶¶ 9-10, 19, 39, 80.)  Despite these clear allegations, Defendant's moving papers did not address the issue of whether the complaint states a claim for retaliation.  In his opposition, Plaintiff noted Defendant's failure to address the issue and set forth arguments as to why his retaliation claim is sufficiently well pleaded to survive a motion to dismiss.  (Dkt. No. 17 at 2, 8, 16-20.)  In his reply, Defendant did not address the retaliation claim, asserting merely that Plaintiff's claim "is vague and abusive." (Dkt. No. 18 at 2.)  I find that Plaintiff's retaliation claim is sufficiently well-pleaded to survive *sua sponte* review.

To prevail on a retaliation claim, a plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendant took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the defendant's decision to take

11

action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274,

287 (1977); *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004).

 Here, the complaint alleges facts plausibly suggesting the existence of all three elements.

First, the complaint alleges that Plaintiff was engaged in constitutionally protected conduct.

"Prisoners ... have a constitutional right of access to the courts and to petition the government for

the redress of grievances."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).  Plaintiff alleges

that he is a *pro se* litigant.  Therefore, I find that Plaintiff has established the first prong of his

retaliation claim.

 Second, in the absence of any argument to the contrary from Defendant, I find that the

complaint pleads facts plausibly suggesting that Defendant took adverse action against Plaintiff

by sexually abusing and harassing him.  The Second Circuit defines "'adverse action' *objectively,*

as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from

exercising ... constitutional rights.'"  *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d

346, 353 (2d Cir. 2003) (emphasis in original).  The Second Circuit has "made clear that this

objective test applies even where a particular plaintiff was not himself subjectively deterred; that

is, where he continued to file grievances and lawsuits."  *Gill*, 389 F.3d at 381.  A similarly

situated individual of ordinary firmness could well be deterred from filing lawsuits or grievances

after being sexually touched and harassed for a period of over a year.

 Third, in the absence of any argument to the contrary from Defendant, I find that the

complaint alleges facts plausibly suggesting that there was a causal connection between

Plaintiff's protected conduct and Defendant's actions.  Plaintiff alleges that Defendant, on

several occasions, made disparaging comments about his status as a jailhouse lawyer.  Therefore,

I find that the retaliation claim is sufficiently well-pleaded to survive *sua sponte* review.

> **D.    Fourth Amendment**

The complaint alleges that Defendant violated Plaintiff's Fourth Amendment rights by subjecting him to an unreasonable search and seizure.  (Dkt. No. 1 ¶¶ 142-43.)  Defendant's moving papers did not address the issue of whether the complaint states a Fourth Amendment claim.  In his opposition, Plaintiff noted Defendant's failure to address the issue and set forth arguments as to why his Fourth Amendment claim is sufficiently well pleaded to survive a motion to dismiss.  (Dkt. No. 17 at 2, 8, 12-15.)  In his reply, Defendant did not address the Fourth Amendment claim, asserting merely that Plaintiff's claim "is vague and abusive."  (Dkt. No. 18 at 2.)  I find that Plaintiff's Fourth Amendment claim is sufficiently well-pleaded to survive *sua sponte* review.

The Fourth Amendment prohibits "unreasonable" searches.  In the law enforcement context, a search is generally "reasonable" if it is conducted pursuant to a warrant supported by probable cause to believe that identified items will be found.  *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989).  In other contexts, "a search unsupported by probable cause may be reasonable when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable."  *Bd. of Educ. v. Earls*, 536 U.S. 822, 829 (2002).  This "special needs" standard applies to searches conducted in prisons.  *See Roe v. Marcotte*, 193 F.3d 72, 78 (2d Cir. 1999).  Searches of prisoners, even strip searches, are constitutional if they are reasonably related to a legitimate penological goal and are conducted in a reasonable manner.  *See Frazier v. Ward*, 528 F. Supp. 80, 81 (N.D.N.Y. 1981).  "However, a . . . search is unconstitutional if it is unrelated to any legitimate penological goal or

13

if it is designed to intimidate, harass, or punish.  *See, e.g.,Iqbal v. Hasty*, 490 F.3d 143, 172 (2d

Cir. 2007)(pretrial detainee alleged Fourth Amendment violation where he was subjected to

repeated strip and body cavity searches that were not related to legitimate government purposes

and designed to punish); *Covino* [*v. Patrissi*, 967 F.2d 73, 80 (2d Cir. 1992)](strip search

accompanied by physical and verbal abuse is unconstitutional); *Hodges v. Stanley*, 712 F.2d 34,

35-36 (2d Cir. 1983) (second strip search performed soon after a first strip search served no

legitimate interest when prisoner was under continuous escort); *Jean-Laurent v. Wilkerson*, 438

F. Supp. 2d 318, 323 (S.D.N.Y.2006)."  *Miller v. Bailey,* No. 05-CV-5493, 2008 U.S. Dist.

LEXIS 31863, at *1, 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008).[8]

        Here, the complaint alleges facts plausibly suggesting that Defendant's April 14, 2007,

and December 26, 2007, pat frisks were not related to a legitimate government purpose and were

instead conducted to intimidate, harass, or punish Plaintiff.  Therefore, I recommend that

Plaintiff's Fourth Amendment claim survive *sua sponte* review.

        **E.      Fifth and Fourteenth Amendments**

        Plaintiff alleges that Defendant violated his Fifth Amendment right "to due process of

law and equal protection" and his Fourteenth Amendment rights.  (Dkt. No. 1 at 33.)

Defendant's moving papers did not address the issue of whether the complaint states a Fifth or

Fourteenth Amendment claim.  In his opposition, Plaintiff noted Defendant's failure to address

the issue.  (Dkt. No. 17 at 2, 8.)  However, he did not set forth any arguments supporting a Fifth

or Fourteenth Amendment cause of action.  In his reply, Defendant did not address the Fifth or

---

        [8]     The Court will provide Plaintiff with a copy of this unpublished decision in
accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

Fourteenth Amendment claim, asserting merely that Plaintiff's claim "is vague and abusive."

(Dkt. No. 18 at 2.)

I construe the complaint as alleging that Defendant violated Plaintiff's rights under the Equal Protection Clause and both the substantive and procedural aspects of the Due Process Clause.  I find that Plaintiff's equal protection claim is sufficient to survive *sua sponte* review on a "class of one" theory.  In order to state such a claim, a plaintiff must allege (1) that he was intentionally treated differently from other similarly situated individuals; and (2) that the disparate treatment was either (a) "irrational and wholly arbitrary" or (b) motivated by animus.[9] *Id.* at 735.  *Assoko v. City of New York*, 539 F. Supp. 2d 728, 734-35 (S.D.N.Y. 2008).  Here, in the absence of any argument to the contrary by Defendant, the complaint alleges facts plausibly suggesting that Defendant treated Plaintiff differently from other similarly situated individuals and that Defendant was motivated by animus.  Therefore, I recommend that Plaintiff's equal protection claim survive *sua sponte* review.

To the extent that Plaintiff is asserting a substantive due process cause of action, I find that it is not sufficient to survive *sua sponte* review.  "Substantive due process protects individuals against government action that is arbitrary, . . . conscience-shocking, . . . or oppressive in a constitutional sense, . . . but not against constitutional action that is incorrect or

---

[9]     The standard for proving a "class of one" case becomes much more stringent after a case proceeds beyond the pleading stage.  After the pleading stage, a plaintiff must show that "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and [that] the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."  *Nielson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) *overruled to extent that it allows a class of one claim by a public employee by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).  *See, e.g., Cohn v. New Paltz Cent. School Dist.*, 171 F. App'x 877 (2d Cir. 2006).

ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal quotation marks and citations omitted).  For the same reasons noted above with regard to Plaintiff's Eighth Amendment cause of action, I find that the complaint does not allege facts plausibly suggesting that Defendant violated Plaintiff's right to substantive due process.  *See Nelson v. Michalko*, 35 F. Supp. 2d 289, 293 (W.D.N.Y. 1999) (dismissing, pursuant to *Boddie*,  prisoner's Eighth Amendment and substantive due process claims arising from pat frisk).

To the extent that Plaintiff is asserting a procedural due process claim based on Defendant denying him one meal, I note that denial of a single meal does not constitute a due process violation.  *Brewton v. Hollister,* 948 F. Supp. 244, 249-50 (W.D.N.Y. 1996); *West v. City of New York*, No. 88 CIV. 1801, 1996 U.S. Dist. LEXIS 6239, 1996 WL 240161, at *6 n.2 (S.D.N.Y. May 8, 1996).[10]  Therefore, I recommend that the Court dismiss this claim *sua sponte* without leave to amend.

To the extent that Plaintiff is asserting a procedural due process claim based on Defendant filing a misbehavior report against him that was later expunged, I find that he has failed to state a cause of action.  In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty or property interest without due process of law.  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).  Plaintiff was not deprived of any liberty interest as a result of the misbehavior report because he was punished solely with a loss of commissary privileges.  (Dkt. No. 1 ¶ 97.) Plaintiff had no property interest in the commissary privileges.  An individual claiming that he

---

[10]      The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).

was deprived of an interest in property "must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Therefore, I recommend that the Court dismiss this claim *sua sponte* without leave to amend.

To the extent that Plaintiff is asserting a procedural due process claim based on the allegation that Defendant confiscated his mattress, two pillows, a catalog, and a pepper, I find that he has failed to state a cause of action.  "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer,* 468 U.S. 517, 533 (1984) (emphasis omitted).  This Circuit has held that "confiscation . . . [does] not constitute a Fourteenth Amendment violation for loss of property because of the availability of state court post-deprivation remedies" in the New York penological system. *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir. 1996); *see also Parratt v. Taylor,* 451 U.S. 527, 544 (1981) ("Although the state remedies may not provide the respondent with all the relief which may have been available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process."), *overruled in part on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986).  Therefore, I recommend that the Court dismiss this claim *sua sponte* without leave to amend.

**F.    Sixth Amendment**

Plaintiff alleges that Defendant violated his Sixth Amendment rights by retaliating against him for representing himself and helping other prisoners with their legal pleadings.  (Dkt. No. 1 at 30, 33.)  Defendant's moving papers did not address the issue of whether the complaint states

a Sixth Amendment claim.  In his opposition, Plaintiff noted Defendant's failure to address the

issue.  (Dkt. No. 17 at 2, 8.)  However, he did not set forth any arguments supporting a Sixth

Amendment cause of action.  In his reply, Defendant did not address the Sixth Amendment

claim, asserting merely that Plaintiff's claim "is vague and abusive."  (Dkt. No. 18 at 2.)  I find

that this claim is not sufficient to withstand *sua sponte* review.

Plaintiff's claim that Defendant violated his Sixth Amendment rights by retaliating

against him due to his status as a jailhouse lawyer is duplicative of Plaintiff's retaliation cause of

action.  Nor has Plaintiff pleaded facts plausibly suggesting that Defendant denied him access to

the courts.[11]  "A prisoner has a constitutional right of access to the courts for the purpose of

presenting his claims, a right that prison officials cannot unreasonably obstruct and that states

have affirmative obligations to assure." *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.

1986) (citing *Bounds v. Smith,* 430 U.S. 817, 821-23 (1977)).  This right of access, however,

guarantees a prisoner "no more than reasonable access to the courts." *Herrera v. Scully,* 815 F.

Supp. 713, 725 (S.D.N.Y. 1993) (citing *Pickett v. Schaefer,* 503 F. Supp. 27, 28 (S.D.N.Y.

1980)).  A claim for denial of reasonable access to the courts requires that an inmate demonstrate

that the alleged act of deprivation "actually interfered with his access to the courts or prejudiced

an existing action." *Id.* (citations omitted).  To state a claim for denial of access to the courts, a

plaintiff must assert non-conclusory allegations demonstrating that he suffered an actual injury.

*Lewis v. Casey*, 518 U.S. 343, 351-353 (1996); *Howard v. Leonardo*, 845 F. Supp. 943, 946

(N.D.N.Y. 1994) (Hurd, M.J.).  Here, Plaintiff has not alleged that he suffered an actual injury.

---

[11]     This right, it should be noted, "is grounded not in the Sixth Amendment but in
various other constitutional provisions." *Bourdon v. Loughren*, 386 F.3d 88, 95 (2d Cir. 2004).

Therefore, I recommend that the Court dismiss this claim *sua sponte* with leave to amend.

      **G.**    **Ninth Amendment**

Plaintiff alleges that Defendant violated his Ninth Amendment rights.  (Dkt. No. 1 at 33.)

Plaintiff does not specify how Defendant's actions violated these rights.  Defendant's moving

papers did not address the issue of whether the complaint states a Ninth Amendment claim.  In

his opposition, Plaintiff noted Defendant's failure to address the issue.  (Dkt. No. 17 at 2, 8.)

However, he did not set forth any arguments supporting a Ninth Amendment cause of action.  In

his reply, Defendant did not address the Ninth Amendment claim, asserting merely that

Plaintiff's claim "is vague and abusive."  (Dkt. No. 18 at 2.)  I find that this claim is not

sufficient to withstand *sua sponte* review.  To the extent that Plaintiff intended this cause of

action to allege that Defendant violated his right to privacy, the claim is duplicative of his Eighth

Amendment and substantive due process claims.  *See Mathie v. Fries*, 935 F. Supp. 1284, 1299

(E.D.N.Y. 1996) (analyzing prisoner's right to bodily privacy from sexual assaults under

substantive due process and Eighth Amendment framework).  Therefore, I recommend that the

Court dismiss this claim *sua sponte* without leave to amend.

      **H.**    **State Law Claims**

Plaintiff alleges that Defendant committed the state law torts of sexual assault,

negligence, infliction of emotional distress, and assault and battery.  (Dkt. No. 1 ¶ 142.)

Defendant's moving papers did not address Plaintiff's state law claims.  In his opposition,

Plaintiff noted Defendant's failure to address the issue.  (Dkt. No. 17 at 2, 8.)  However, he did

not set forth any arguments supporting his state law claims.  In his reply, Defendant did not

address the state law claims, asserting merely that Plaintiff's claim "is vague and abusive."  (Dkt.

No. 18 at 2.)  I find that three of these claims are not sufficient to withstand *sua sponte* review,

but that Defendant should be directed to respond to the claim for infliction of emotional distress.

The statute of limitations for each of these claims is one year.  N.Y C.P.L.R. § 215(3)

(McKinney 2003).  Plaintiff's complaint states that it was "submitted" on March 25, 2009.  (Dkt.

No. 1 at 32, 34.)  The complaint was filed on March 27, 2009.  (Dkt. No. 1.)  The only

allegations in the complaint about Defendant's conduct within one year before March 25, 2009,

are that: (1) Defendant made the "kissing gesture" at Plaintiff on March 31, 2008, and April 13,

2008; (2) Defendant made the "kissing gesture" and called Plaintiff "sweet cheeks" on April 12,

2008; (3) on April 14, 2008, Defendant "threw the Plaintiff's chair [out] of the tier"; and (4)

Defendant called Plaintiff "little man" on April 26, 2008.  (Dkt. No. 1 ¶¶ 125-129.)  These

allegations, standing alone, are insufficient to plausibly suggest that Defendant committed sexual

assault, negligence, or assault and battery.  Thus, these allegations are insufficient to trigger the

continuing violation doctrine, which provides an extension of the statute of limitations in some

circumstances.  *Neufeld v. Neufeld*, 910 F. Supp. 977, 982-83 (S.D.N.Y. 1996).  Therefore, I

recommend that the Court dismiss Plaintiff's sexual assault, negligence, and assault and battery

claims *sua sponte* without leave to amend.  However, the allegations regarding Defendant's

conduct in late March and April 2008 may be sufficient to invoke the continuing violation

doctrine as to Plaintiff's claim of infliction of emotional distress.  In the absence of any contrary

argument from Defendant, I recommend that the Court direct Defendant to respond to this claim.

**ACCORDINGLY**, it is

**ORDERED** that the the Clerk provide Plaintiff with copies of *Williams v. Keane*, No. 95

Civ. 0379, 1997 U.S. Dist. LEXIS 12665, 1997 WL 527677, at *11 (S.D.N.Y. Aug. 25, 1997);

*Miller v. Bailey,* No. 05-CV-5493, 2008 U.S. Dist. LEXIS 31863, at *1, 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008); and *West v. City of New York*, No. 88 CIV. 1801, 1996 U.S. Dist. LEXIS 6239, 1996 WL 240161, at *6 n.2 (S.D.N.Y. May 8, 1996) in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009); and it is further

      **RECOMMENDED** that Defendant's motion to dismiss for failure to state a claim (Dkt. No. 13) be deemed a partial motion to dismiss and be **<u>GRANTED</u>** without leave to amend the Eighth Amendment or verbal harassment claims; and it is further

      **RECOMMENDED** that the Court dismiss the following claims *sua sponte* without leave to amend: (1) the substantive due process claim; (2) the procedural due process claim; (3) the Ninth Amendment claim; and (4) the state law claims for sexual assault, negligence, and assault and battery; and it is further

      **RECOMMENDED** that the Court dismiss Plaintiff's access to the courts claim *sua sponte* with leave to amend*;* and it is further

      **RECOMMENDED** that Defendant be ordered to respond to: (1) the retaliation claim; (2) the Fourth Amendment claim; (3) the equal protection claim; and (4) the state law claim for infliction of emotional distress.

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: May 17, 2010
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

22